The STATE of Ohio, Appellee,

v.

BELL, Appellant.

[Cite as State v. Bell, 176 Ohio App.3d 378, 2008-Ohio-2578.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22158.

Decided May 23, 2008.

</div>

380

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, for appellee.

Barbara A. Farnbacher, Assistant State Public Defender, for appellant.

DONOVAN, Judge.

{¶ 1} Defendant-appellant Arthur Russell Bell appeals his conviction and sentence for two counts of sexual battery, one count of attempted sexual battery, and one count of gross sexual imposition.

{¶ 2} On December 18, 2006, Bell was indicted by the Montgomery County Grand Jury for count one for gross sexual imposition of a child under the age of 13, in violation of R.C. 2907.05(A)(4), a felony of the third degree; counts two and three for sexual battery in violation of R.C. 2907.03(A)(5), also felonies of the third degree; count four for attempted sexual battery in violation of R.C. 2923.02(A), a felony of the fourth degree; and count five for gross sexual imposition by force in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. Bell was arraigned on December 28, 2006, stood mute, and the trial court entered a not-guilty plea on his behalf.

{¶ 3} In count one of the indictment, the state alleged that Bell had sexually molested his minor granddaughter, M.O. Prior to trial, however, the state dismissed count one after the trial court determined that M.O. was not competent to testify. Thus, counts two, three, four, and five in the indictment were renumbered counts one, two, three, and four. Counts one, two, and three alleged that Bell had sexually molested and attempted to molest his biological daughter, T.O., on several occasions. Counts two through four were originally listed in the indictment as occurring between the dates of January 1, 2001, and January 31, 2004. On March 6, 2007, however, the state moved to amend the time frame in which those offenses occurred to between August 1, 2000, to December 31, 2003. The trial court sustained the state's motion during a hearing held on March 9, 2007. Count five in the indictment pertains to an instance when Bell was alleged to have sexually molested his stepson, R.O., between the dates of January 1, 1995, and December 31, 1998.

{¶ 4} Following a jury trial that began on March 19, 2007, and concluded on March 22, 2007, Bell was found guilty of counts two through five in the indictment. On April 24, 2007, the trial court sentenced Bell to four years imprisonment for each sexual-battery charge. Bell received one year in prison for the attempted-sexual-battery charge, as well as one year for the gross-sexual-imposition charge. The trial court ordered that the prison terms be served consecutively to one another for an aggregate sentence of ten years' imprisonment. Additionally, the trial court classified Bell as a sexually oriented offender. Bell filed a timely notice of appeal with this court on April 30, 2007.

## I

{¶ 5} Bell's first assignment of error is as follows:

{¶ 6} "The trial court erred when it excluded important defense evidence offered not only to impeach the alleged victim's credibility, but also to negate her testimony regarding the allegations. This evidentiary error deprived Bell of his right to present a defense and his right to a fair trial."

{¶ 7} In his first assignment, Bell contends that the trial court abused its discretion when it excluded relevant testimonial evidence that he argues would have impeached T.O.'s credibility, as well as contradicted her testimony regarding the reason she ran away from home in the spring of 2003.[1] Specifically, defense counsel attempted to elicit testimony from T.O. that the real reason she ran away

---

1. T.O. testified that she also ran away from home a second time in July of 2003 after Bell had allegedly engaged in overtly sexual behavior in her presence and then assaulted T.O. when she attempted to hide from him.

from home was because she had been caught stealing Xanax[2] from her father. T.O. had previously testified that the reason she had run away the first time was that Bell had allegedly been molesting her. When defense counsel attempted to cross-examine T.O. regarding the allegations of her drug use, the following exchange occurred:

{¶ 8} "Mr. Lachman: Now, let's talk about the time that you ran away. The fact is, [T.O.], there were actually two times in 2003 that you ran away; isn't that correct?

{¶ 9} "T.O.: Yes.

{¶ 10} "Mr. Lachman: The first time happened sometime in the Spring of 2003 when you were actually still in school; isn't that correct?

{¶ 11} "T.O.: Yes.

{¶ 12} "Mr. Lachman: And that day—time, you were not gone overnight; correct?

{¶ 13} "T.O.: The first time?

{¶ 14} "Mr. Lachman: The first time.

{¶ 15} "T.O.: No, I was not gone over night.

{¶ 16} "Mr. Lachman: Okay. You had been skipping school?

{¶ 17} "T.O.: No.

{¶ 18} "Mr. Lachman: You had—had you, in fact, stolen—

{¶ 19} "The State: Objection.

{¶ 20} "The Court: Sustained.

{¶ 21} "Mr. Lachman: Did you take any Xanax?

{¶ 22} "The State: Objection.

{¶ 23} "Mr. Lachman: Your Honor—

{¶ 24} "T.O.: Yeah.

{¶ 25} "The Court: Sustained. The jury will disregard the question and answer.

{¶ 26} "Mr. Lachman: May we approach, Your Honor?

{¶ 27} "The Court: You may.

{¶ 28} " * * *

---

2. Xanax is a prescription medication used to treat anxiety.

{¶ 29} "Mr. Lachman:  Your Honor, we've established that there's two—I mean, she was talking about—it didn't come out on cross—I mean, direct, but there were two different times that she ran away.  The allegation is that it's a result of him.  She can answer no if it's not true.  But to not let me ask it is—

{¶ 30} "The Court:  What you're trying to ask is one, you are trying to ask whether or not she stole anything and two, whether or not she took any Xanax, neither of which are relevant whatsoever to whether or not she ran away or whether she came back.  But to infer that she was taking Xanax at that time, to infer that she had stolen something is improper and I stand by the ruling that I made."

{¶ 31} Prior to the calling of T.O.'s mother, Sheila Bell, as a defense witness, the issue regarding T.O.'s alleged theft of her father's Xanax was again discussed in the following exchange:

{¶ 32} "The State:  You Honor, before we do come back this afternoon, there's just one issue I want to address.  I have no idea who the defense is calling in this case.  But should they call Sheila Bell, who's the mom in this case, the State has reason to believe that she may try and talk about potential drug activity involving one or both of the victims in this case.  And I want to make clear that I'm going to object to that going into that particular area.

{¶ 33} " * * *

{¶ 34} "The Court:  Mr. Lachman?

{¶ 35} "Mr. Lachman:  Your Honor, I can tell you that it is my understanding the testimony where drug use would come up is in relating the issues surrounding one of the times that [T.O.] ran away.

{¶ 36} "It is not to be offered to somehow go to the credibility, but to the circumstances surrounding her running away.  And any objection to that, I would point out the State is the one that had her running away because if what she alleges her father was doing to her.

{¶ 37} "I'm not saying she ran away because of drugs.  I don't believe that's what the testimony is going to show.  But we have the right to get into why she ran away.  And it's not even drug abuse.  I don't think—I mean, the fact is I'm [sic] not that drugs isn't going to play—or prescription drugs aren't going to play into it, but it's not being offered to somehow discredit her credibility in all of this because of drug abuse.

{¶ 38} "The Court:  Well, you can ask that question of that witness if it has something to do with that, whether her running away had anything to do with alleged sexual abuse without getting into a drug issue.  Because if I allow you to get into or you get into a drug issue, then I'm going to [sic] that seems to me to

open the door for the allegations in the reports that I know that I have released that there is cocaine use by the Defendant in the household.

{¶ 39} "So, we're not going to get into drug issues about who's using drugs, who's not using drugs. If you want to get into the issue about the running away, whether that was related to any sexual abuse, you may ask the question that way as a leading question. And if the witness says, no, it was not related to that, then we're going to leave it as it is."

{¶ 40} The admission or exclusion of evidence rests soundly within the trial court's discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. The trial court's decision concerning the admission or exclusion of evidence will not be reversed absent an abuse of that discretion. Id. at 182, 31 OBR 375, 510 N.E.2d 343. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 41} In the instant case, the decision by the trial court to exclude any testimonial evidence that demonstrated that T.O.'s reason for running away the first time was that she had been caught stealing Xanax from Bell, and not because he allegedly molested her, was error. Since the state seemed to be suggesting she ran away due to molestation, an alternative motive, theft of drugs was relevant. This was admissible evidence, and the court should have permitted a limited inquiry on this subject without opening up the issue of purported drug abuse within the household. However, the cumulative record before us contains clear evidence from which a trier of fact could find Bell guilty beyond a reasonable doubt of the numerous sexual assaults he perpetrated on T.O. Thus, the trial court's exclusion of this evidence is harmless error, and we conclude that the admission of such evidence would not have led to a contrary outcome.

{¶ 42} Bell's first assignment of error is overruled.

## II

{¶ 43} Bell's second assignment of error is as follows:

{¶ 44} "The trial court erred when it admitted expert evidence regarding behaviors of sexual abuse victims. The erroneous admission of this expert evidence deprived Bell of his right to a fair trial."

{¶ 45} In his second assignment, Bell argues that the trial court abused its discretion when it allowed the state to present the testimony of Dr. Joyce Miceli. Dr. Miceli was retained by the state to testify regarding the wide range of behaviors that sexually abused children may exhibit, including internalizing behaviors, externalizing behaviors, and sexualized behaviors. It is undisputed that Dr. Miceli did not ultimately opine as to whether T.O. or R.O. had suffered any sexual abuse at the hands of Bell.

{¶ 46} Bell asserts that it was improper for the trial court to admit the testimony of Dr. Miceli because her expert testimony was unreliable insofar as children who are victims of sexual abuse exhibit so varied a range of emotions and behaviors that presently no proven and accepted standard exists by which to judge their actions. Additionally, Bell contends that Dr. Miceli's expert testimony should not have been admitted, because it was unhelpful and confusing to the trier of fact since she testified that sexually abused children may exhibit certain behaviors or have no symptoms at all. In support of his argument, Bell cites Justice Resnick's dissenting opinion in *State v. Stowers* (1998), 81 Ohio St.3d 260, 690 N.E.2d 881.

{¶ 47} "The determination of the admissibility of expert testimony is within the discretion of the trial court. Evid. R. 104(A). Such decisions will not be disturbed absent abuse of discretion. * * * 'Abuse of discretion' suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of this court to substitute its judgment for that of the trial court." *Valentine v. Conrad,* 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9. Thus, we review the instant appeal under an abuse-of-discretion standard.

{¶ 48} Evid.R. 702 provides:

{¶ 49} "A witness may testify as an expert if all of the following apply:

{¶ 50} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 51} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 52} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 53} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 54} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 55} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 56} In *Stowers*, the majority held that "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." Id. 81 Ohio St.3d at 261, 690 N.E.2d at 881. The majority found that through the expert's psychological training and professional experience, she possessed specialized knowledge of the kind recognized under Evid.R. 702 that the average person lacks about behavioral characteristics of minor victims of sexual abuse. " 'Most jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse. Incest is prohibited in all or almost all cultures and the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused.' " *Stowers*, 81 Ohio St.3d at 262, 690 N.E.2d 881, quoting *State v. Boston* (1989), 46 Ohio St.3d 108, 128, 545 N.E.2d 1220.

{¶ 57} Dr. Miceli simply offered her opinions regarding the wide range of behavioral characteristics displayed by minor victims of sexual abuse. The law clearly permits this kind of expert testimony, and Dr. Miceli did not go beyond permissible boundaries and opine whether these children were in fact abused by Bell. A thorough review of Dr. Miceli's expert testimony establishes that she possessed specialized knowledge that could aid a trier of fact in assessing whether the children actually suffered sexual abuse. Further, Bell incorrectly cites the dissent in *Stowers* in support of his assertion that Dr. Miceli should not have been allowed to testify. Following the majority holding in *Stowers*, we find that the sole effect of Dr. Miceli's testimony was to aid the jury in understanding the behavioral characteristics of minor victims of sexual abuse without opining as to the veracity of R.O. and T.O. Thus, the trial court did not abuse its discretion when it overruled Bell's motion in limine and admitted the testimony of Dr. Miceli.

{¶ 58} Bell's second assignment of error is overruled.

### III

{¶ 59} Bell's third assignment of error is as follows:

{¶ 60} "Bell was deprived of his right to due process by the state's failure to narrow the time frame alleged in one of the counts contained in the indictment, and by the state's use of identically worded counts in two counts of the indictment."

## A. Specificity Regarding Time Frame in Count One

{¶ 61} In his third assignment, Bell contends that he was denied his right to due process when the state failed to narrow the time frame in the second count of the indictment, which alleges that Bell sexually battered T.O. when she was in the seventh grade, on a day when she had a tooth pulled. Bell argues that the state's failure to specifically identify the date on which this crime allegedly occurred was a violation of his right to adequate notice of the charges against him, and it prejudiced his ability to mount a viable defense. Bell asserts that if he had been provided with specific information regarding the particular date the sexual battery allegedly occurred, he could have corroborated his denial of the charge with other credible evidence.

{¶ 62} As previously noted, counts two through four pertaining to T.O. were originally listed in the indictment as occurring between the dates of January 1, 2001, and January 31, 2004. On March 6, 2007, however, the state moved to amend the time in which those offenses occurred between August 1, 2000, and December 31, 2003. The trial court sustained the state's motion on March 9, 2007.

{¶ 63} Bell provided the following testimony during direct examination with respect to the alleged sexual battery of T.O.:

{¶ 64} "Mr. Lachman: Do you recall a time when you took [T.O.] to the dentist?

{¶ 65} "Bell: Yes, I do.

{¶ 66} "Mr. Lachman: Do you recall when that was?

{¶ 67} "Bell: No, I do not.

{¶ 68} "Mr. Lachman: If she testified that she was in seventh grade—

{¶ 69} "The State: Objection. He said he didn't know.'

{¶ 70} "The Court: Sustained.

{¶ 71} "Mr. Lachman: Was that the only time you took her to the dentist?

{¶ 72} "Bell: No. [T.O.] had been to the dentist many times, but this time—that time—in other words, the other times she had been to the dentist, me and my wife had taken her. At this point, for some reason, I was home that day, so I did take her.

{¶ 73} "Mr. Lachman: Did you bring her home after?

{¶ 74} "Bell: Yes.

{¶ 75} "Mr. Lachman: Why didn't [T.O.] go back to school?

{¶ 76} "Bell: I'm the type of person that I want you in school no matter what. So, at the end of the appointment, [T.O.] was all, for lack of words, I don't know [sic] you want to say, but she just—I questioned her, [T.O.], do you feel like you can go to school, and it was no, dad. So, if my daughter is—says, no, then it's no, so I didn't take her.

{¶ 77} "Mr. Lachman: So, you took her home?

{¶ 78} "Bell: Yes.

{¶ 79} "Mr. Lachman: What did [T.O.] do, if you recall?

{¶ 80} "Bell: I think she went to bed.

{¶ 81} "Mr. Lachman: Did you go back to work?

{¶ 82} "Bell: No.

{¶ 83} "Mr. Lachman: At any point that day, did you do back to work?

{¶ 84} "Bell: No.

{¶ 85} "Mr. Lachman: At any point that day, did you wake her up while she was sleeping?

{¶ 86} "Bell: No.

{¶ 87} "Mr. Lachman: And at any point that day, did you wake her up and get on top of her?

{¶ 88} "Bell: No, I did not.

{¶ 89} "Mr. Lachman: Did at any time that day—

{¶ 90} "The State: Objection to the form of these questions, Your Honor.

{¶ 91} "The Court: Sustained.

{¶ 92} "Mr. Lachman: Did you sexually assault you daughter that day?

{¶ 93} "Bell: No, I did not."

{¶ 94} In *State v. Mundy* (1994), 99 Ohio App.3d 275, 650 N.E.2d 502, we affirmed the decision of the trial court to allow the state to amend the indictment and bill of particulars to conform to evidence at the conclusion of the case-in-chief, in a prosecution for gross sexual imposition, by expanding the specified time frames during which the offense was alleged to have occurred. We held that the action taken by the trial court did not constitute an abuse of discretion nor a failure of justice. We also found that the defendant in *Mundy* failed to demonstrate how the preparation of his defense was hampered or how he was prejudiced by amendment of the indictment.

{¶ 95} We find the following language from *Mundy* instructive in the instant case:

{¶ 96} "Mundy was charged with fourteen separate violations of R.C. 2907.05(A)(4). The precise date and time of the offense are not essential elements of that crime. * * *. Thus, a certain degree of inexactitude in averring the date of the offense is not *per se* impermissible or fatal to the prosecution. * * *. Nevertheless, where an accused requests a bill of particulars, the state must supply specific dates and times for the alleged offense if it possesses that information. * * *. Furthermore, even if the state is unable to supply more specific dates for the offenses because it does not possess such information, the absence of specific dates may yet be fatal to the prosecution if it results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the time interval specified. * * *.

{¶ 97} "In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time. * * *. Such is the case here. There is no evidence whatsoever that the state knew of any more specific dates for the offenses than those set out in the indictment. The state was simply unable to supply specific dates when these offenses occurred because it did not have that information."

{¶ 98} The only question remaining is whether the state's inability to provide more specific dates and times resulted in material detriment to Bell's ability to defend himself. Bell argues in a conclusory fashion that this is the case, but he fails to demonstrate how he was prejudiced by the lack of a specific date. Bell testified at trial that he did, in fact, take T.O. to the dentist on the day in question, as well as take her home after the appointment concluded. Bell also testified that he did not go to work that day, but rather remained home with T.O. while she slept. In short, Bell did not present an alibi defense with respect to the sexual-battery count, but merely denied that any improper sexual conduct occurred on that day.

{¶ 99} " ' "A defendant is not prejudiced by the failure of the indictment to specify the dates and times upon which the charged offenses allegedly occurred if such failure does not impose a material detriment to the preparation of his defense. Where the defendant does not present an alibi defense, where he concedes being alone with the victims of the alleged sex offenses at various times throughout the relevant time frame, and where his defense is that the alleged touchings never happened, the inexactitude of dates or times in the indictment is not prejudicial error." ' " *State v. Owens* (Feb. 25, 2000), Montgomery App. No. 17394, 2000 WL 217219, quoting *State v. Boehm* (Dec. 31, 1997), Montgomery App. No. 16335, 1997 WL 856285, quoting *State v. Barnecut* (1988), 44 Ohio App.3d 149, 542 N.E.2d 353; paragraph one of the syllabus.

{¶ 100} Bell has not demonstrated that his ability to defend himself was prejudiced by the lack of more specific dates and times when the offense outlined in count one of sexual battery was allegedly committed against T.O. Thus, the lack of a more specific date did not deprive Bell of a fair trial or due process of law.

## B. Identically Worded Counts in the Indictment

{¶ 101} In the second section of Bell's third assignment, he contends that the indictment's containing two identically worded counts of sexual battery violated his right to due process and constituted plain error. Specifically, Bell argues the state's indictment and conviction of Bell based on identically worded counts of sexual battery failed to accord him adequate notice of the charged offenses and failed to protect him against double jeopardy.

{¶ 102} The Double Jeopardy Clause is in the Fifth Amendment to the United States Constitution and states:

{¶ 103} "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb * * *."

{¶ 104} It is well established that the Double Jeopardy Clause protects against successive prosecutions for the same offense. *United States v. Dixon* (1993), 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556; *Ashe v. Swenson* (1970), 397 U.S. 436, 445–446, 90 S.Ct. 1189, 25 L.Ed.2d 469. Once a competent tribunal has decided an issue of ultimate fact in a defendant's favor, the double-jeopardy doctrine also precludes a second jury from ever considering the same or identical issue in a later trial.

{¶ 105} Bell relies upon *Valentine v. Konteh* (C.A.6, 2005), 395 F.3d 626, to support his argument that his constitutional due process rights were violated when he was convicted of counts one and two for sexual battery. In *Valentine,* the defendant was convicted of 20 counts of rape of a child, each of which was identically worded, and of 20 counts of felonious sexual penetration, each of which was also identically worded. The state did not distinguish the factual bases for these charges in the indictment, in the bill of particulars, or at trial. At trial, the victim testified that she was forced to perform fellatio on "about twenty" occasions, that she was digitally penetrated on "about fifteen" occasions, and that she was anally penetrated on "about ten" occasions.

{¶ 106} Addressing Valentine's habeas petition, the Sixth Circuit held that the indictment was constitutionally defective, because the undifferentiated charges failed to give the defendant adequate notice of the charges and did not protect him against double jeopardy. The Sixth Circuit commented that the "problem in this case is not the fact that the prosecution did not provide the defendant with

exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two distinct criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8–year–old victim described 'typical' abusive behavior by Valentine and then testified that the 'typical' abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented." Id. at 632–633. The court noted that "[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial." Id. at 634.

{¶ 107} In the instant case, the record indicates that the state adequately differentiated between the two identically worded counts of sexual battery that involved T.O. such that Bell's due process rights were not violated nor was he subject to double jeopardy. Bell filed a request for a bill of particulars on January 2, 2007. On January 30, 2007, the state filed a bill of particulars in which it set out a detailed basis for each of the five counts in the indictment. With respect to the two sexual battery counts[3] (counts two and three in the original indictment), the bill of particulars stated in pertinent part:

{¶ 108} "**Counts 2 and 3**

{¶ 109} "The State will prove that between the dates of January 1, 2001, and January 31, 2004, and in Montgomery County, Ohio, the defendant did engage in sexual conduct with another, who was not his spouse, and the defendant was the parent (step-father) of the victim. This is in violation of R.C. 2907.03(A)(5), Sexual Battery (Parent), felonies of the third degree.

{¶ 110} "The victim in Counts 2 and 3 is [T.O.], the step-daughter of the defendant. *The sexual conduct includes, but is not limited to, vaginal intercourse and digital penetration of the victim by the defendant.*" (Emphasis added.)

{¶ 111} In its bill of particulars filed prior to trial, the state adequately differentiated between the two sexual battery counts involving T.O., thereby providing Bell with notice of the details of each separate charge. Further, T.O.

---

**3.** At the time that the state filed its bill of particulars, the original indictment containing five counts was still the controlling document, and the dates in which the offenses allegedly occurred had not yet been amended. As previously noted, the state dismissed count one from the original indictment. At the time of trial, the indictment was rearranged so that counts two, three, four, and five were now counts one, two, three, and four.

testified during trial that one occasion after she had a tooth pulled at the dentist, Bell got into bed with her and placed his penis inside her vagina. T.O. testified that on other occasions Bell would get into bed with her and digitally penetrate her. Lastly, the record indicates that the state differentiated between the two sexual-battery counts in its closing argument insofar as it asserted that count one was proven by testimony regarding Bell's penile penetration of T.O., and count two was proven by the testimony regarding Bell's digital penetration of T.O. Thus, Bell's constitutional right to due process was not violated.

{¶ 112} Bell's third assignment of error is overruled.

## IV

{¶ 113} Bell's fourth assignment of error is as follows:

{¶ 114} "Bell's convictions are against the manifest weight of the evidence."

{¶ 115} In his fourth assignment, Bell contends that the guilty verdict reached by the jury was against the manifest weight of the evidence. Specifically, Bell attacks the victims' credibility and argues that the testimony of T.O. and R.O. contained various inconsistencies and was, therefore, not believable.

{¶ 116} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Adrian,* 168 Ohio App.3d 300, 2006-Ohio-4143, 859 N.E.2d 1007, at ¶ 6, quoting *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Essentially, a reviewing court "sits as a 'thirteenth juror' and makes its own independent review of the evidence and inferences derived therefrom, and assesses and weighs the credibility of each witness's testimony." Hagel, Ohio's Criminal Practice and Procedure (2006–2007) 796, Section 41.207. However, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997

WL 476684, at \*4. Only in exceptional circumstances should a judgment be reversed as being against the manifest weight of the evidence. *State v. Parker*, Montgomery App. No. 18926, 2002-Ohio-3920, 2002 WL 1770497, at ¶ 70.

{¶ 117} In support of his contention that the verdict was against the manifest weight of the evidence, Bell argues that neither T.O. nor R.O. offered credible testimony that clearly established that Bell molested either of them. With respect to T.O., Bell asserts that her testimony against him was not worthy of belief because she did not report the abuse for many years, even though she had several opportunities to do so. Further, Bell points out that even after she allegedly had been sexually abused by him for years, T.O. still chose to bring her own child into the home he shared with his wife.

{¶ 118} Bell argues that R.O.'s testimony against him was equally incredible because R.O. still maintained a relatively close personal relationship with him. R.O. testified that he believed Bell was sexually abusing T.O. because he kept her home from school on various occasions while he sent R.O. and another brother to school. Bell points out that when the abuse of T.O. allegedly occurred between August 1, 2000, to December 31, 2003, R.O. had already dropped out of school and could not have observed the abuse of T.O. that he testified to at trial. Thus, Bell argues that R.O. was unable to corroborate the testimony of T.O. regarding her claims of sexual abuse against Bell.

{¶ 119} Finally, Bell, who states that he has no prior criminal record, contends that both he and his wife, Sheila, denied the allegations of sexual abuse of both T.O. and R.O. He also argues that no physical evidence was presented, thus the victims' claims of sexual abuse were uncorroborated.

{¶ 120} This court addressed the issue of witness credibility under similar circumstances in *State v. Gardner*, Montgomery App. No. 21027, 2006-Ohio-1130, 2006 WL 574305, ¶ 24–26:

{¶ 121} "The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230 [39 O.O.2d 366, 227 N.E.2d 212]. In *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288 [1997 WL 476684], we observed:

{¶ 122} " 'Because the factfinder \* \* \* has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.' Id., at [\*]4.

{¶ 123} "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03 [1997 WL 691510]."

{¶ 124} In the instant case, the record indicates that the jury did not lose its way in arriving at a guilty verdict on all of the remaining counts in the indictment. The jury chose to believe T.O. and R.O.'s claims of sexual abuse against Bell, and we will not substitute our judgment for that of the jury empaneled in order to determine Bell's guilt or innocence. Thus, Bell's convictions are not against the manifest weight of the evidence.

{¶ 125} Bell's fourth assignment of error is overruled.

## V

{¶ 126} Bell's fifth and sixth assignments of error are as follows:

{¶ 127} "The trial court's imposition of nonminimum and consecutive prison terms on an offender who had never before served a prison term violated the Sixth Amendment to the United States Constitution."

{¶ 128} "Arthur Russell Bell was deprived of his right to the effective assistance of counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio constitution."

### A. Constitutional Argument

{¶ 129} In his fifth assignment, Bell contends that the trial court erred when it sentenced him to nonminimum, consecutive prison terms in violation of rights as guaranteed by the Ohio Constitution, as well as the United States Constitution. Specifically, Bell argues that the sentence imposed by the trial court pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, is unconstitutional because it violates the following rights: (1) his rights under the Due Process or Ex Post Facto Clauses of the United States Constitution and (2) his right to a jury trial as protected by the Sixth and Fourteenth Amendment of the United States Constitution.

{¶ 130} "However, this court recently determined in *State v. Burkhart*, Champaign App. No. 2006–CA–18, 2007-Ohio-3436, 2007 WL 1934357, that a claim that a decision of the Supreme Court of Ohio is unconstitutional is not cognizable in this court. In so holding, we stated: 'The appellate jurisdiction of this court permits us to review "judgments or final orders of court[s] of record inferior to the courts of appeals within the district" as well as "orders or actions of administrative officers or agencies." Section 3(B)(2), Article IV, Ohio Constitution. Manifestly, decisions of [t]he Supreme Court of Ohio are outside those

classifications.' " *State v. Mitchell,* Clark App. No. 2006–CA–53, 2007-Ohio-3590, 2007 WL 2019671. Thus, we must defer to the authority of the Ohio Supreme Court regarding the constitutionality of *Foster.* Bell's arguments in this regard are overruled.

## B. Ineffective Assistance

{¶ 131} In his final assignment, Bell contends that he received ineffective assistance of counsel when his counsel failed to object at the sentencing hearing to any sentence beyond concurrent, minimum sentences on ex post facto and due process grounds. Bell argues that he was prejudiced by counsel's omission when the trial court sentenced him to nonminimum, consecutive sentences for an aggregate sentence of ten years. " 'When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' " *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citing *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 358 N.E.2d 623, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

{¶ 132} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–688, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.

{¶ 133} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that absent counsel's errors, the result of the trial would have been different. *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 134} Under the *Foster* mandate, the trial court was not required to make any findings or discuss on the record the reasoning behind the sentence it chose to impose. The trial court imposed an aggregate sentence of ten years. Pursuant to the holding in *Foster*, the court had full discretion to impose any sentence it deemed appropriate within the statutory range for the charged offenses. Thus, Bell was not prejudiced by counsel's failure to object to the nonminimum, consecutive sentence on constitutional grounds.

{¶ 135} Bell's fifth and sixth assignments are overruled.

## VI

{¶ 136} All of Bell's assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and VALEN, JJ., concur.

ANTHONY VALEN, J., retired, of the Twelfth District Court of Appeals, sitting by assignment.