[Cite as *State v. Jordan*, 2022-Ohio-2708.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29166 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-2048 |
| | : | |
| ADAM P. JORDAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 5th day of August, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, 101 Southmoor Circle NW, Kettering, Ohio 45429
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Adam P. Jordan appeals from his convictions in the Montgomery County Court of Common Pleas for rape, attempted rape and gross sexual imposition. For the reasons discussed below, the judgment of the trial court is affirmed.

## I. Facts and Procedural Background

{¶ 2} On October 21, 2019, a Montgomery County grand jury returned an indictment charging Jordan with one count of rape of a minor under the age of 10, one count of rape of a minor under the age of 13, one count of attempted rape of a minor under the age of 10, one count of gross sexual imposition by force, and 13 counts of gross sexual imposition of a child under the age of 13. The charges stemmed from allegations that Jordan had sexually abused his two minor daughters, A.J. and M.H. The matter proceeded to a jury trial beginning in May 2021. At the time of the trial, A.J. was 17 and M.H. was 22.

{¶ 3} M.H. testified that when she was between the ages of seven and twelve, Jordan would routinely make her rub his thighs and buttocks, after which he would put her on his lap facing him while he rubbed his penis against her vaginal area. Jordan would also touch her thighs and buttocks. During these encounters, Jordan would have an erection. M.H. testified regarding five specific instances of this behavior.

{¶ 4} A.J. also testified during trial. According to A.J., the first time she was abused, she was wearing a "Cinderella princess nightgown" when Jordan called her into his bedroom. Tr. p. 255. She testified she knew the abuse started when she was

approximately six years old because that nightgown, which fit her loosely at the time of the abuse, fit her snugly by the time she was eight. According to A.J., Jordan was watching pornography on his computer. He made her sit on his lap and watch with him. A.J. testified that Jordan eventually took off his pants and underwear and began rubbing against her buttocks. Jordan later removed her underwear and pulled the nightgown up. Jordan touched her vagina with his hands, then began rubbing his penis against her vaginal area. A.J. testified that Jordan inserted his fingers into her vagina. She testified that the encounter ended when the pair heard a loud noise downstairs; Jordan jumped up and got dressed. He told her to go wash her face because she had been crying.

{¶ 5} A.J. also recounted being abused again when she was wearing a "pink tank top and a pair of plaid Justice shorts" she owned when she was six. Tr. p. 263. She testified that Jordan was in the living room watching a movie which depicted a woman bathing in a river when he called her over and sat her on his lap. Jordan began to rub against her and eventually took her upstairs, where he undressed them both. He rubbed his penis against her vagina and also inserted his fingers into her vagina. A.J. testified that Jordan had masturbated and ejaculated onto her stomach.

{¶ 6} A.J. testified she was also abused when she was eight years old. She testified that she was wearing a "sparkly" "green Christmas dress" that had "white tulle around it." Tr. p. 264. She testified that her mother was out shopping when Jordan called her upstairs under the guise that her mother wanted to speak to her on the phone. When she went upstairs, she learned that her mother had not called. Instead, Jordan was watching pornography. He again made her sit on his lap, rubbed her vagina, and

thrust against her. A.J. testified that Jordan then took her hand and made her rub his penis. He pulled her dress up and her tights down and tried to put his penis into her vagina. She testified she felt a "lot of pressure" and that it was "very painful." Tr. p. 265.

{¶ 7} A.J. further testified that the family went to a local amusement park when she was eight; after they returned home, her mother left the house to go shopping. Jordan took A.J. to her bedroom and made her bend over onto the bed while he spanked her with a spoon. He also pulled her head back and stated he wanted to watch her eyes while he spanked her. Jordan then used his hand to spank her. He also made her touch his penis and he rubbed her vagina. A.J. testified that Jordan also masturbated and ejaculated onto her stomach.

{¶ 8} A.J. next testified she was 13 years old when Jordan took her with him to see the Phantom of the Opera at the Schuster Center. During the show, Jordan began rubbing her leg and moved his hand up to the point where his fingers brushed against her vagina. She testified that she pushed his hand away, in response to which he dug his nails into her thigh.

{¶ 9} The State presented the testimony of Jennifer Knisley, a social worker with CARE House. Knisley testified that CARE House, a facility located on the campus of Dayton Children's Hospital, is a child-advocacy center where members of a multidisciplinary team address victims of child abuse in Montgomery County. CARE House provides a child-friendly environment where the team members use a one-interview approach with child victims in order to reduce the stress and trauma related to being questioned multiple times by different individuals. Knisley conducted the forensic

interview of A.J. Based upon A.J.'s disclosures during the interview, Knisley referred her for trauma-based counseling and a physical exam.

{¶ 10} The State also presented the testimony of Dr. Brenda Joyce Miceli. Miceli is a licensed pediatric psychologist at Dayton Children's Hospital who primarily works with sexual abuse patients through CARE House. At trial, Miceli was designated as an expert in child psychology and child sexual abuse without objection. Miceli testified that she had been treating A.J. since February 2019. A.J. had been diagnosed with post-traumatic stress disorder.

{¶ 11} Kettering Police Department Detective Kevin McGuire also testified for the State. McGuire had been assigned to investigate the matter after M.H. had called the department to report the abuse. McGuire testified that M.H.'s allegations indicated that both A.J. and M.H. had been abused. McGuire began his investigation by talking to the girls' mother ("Mother"). According to McGuire, the "basic information" he obtained from Mother indicated that "her daughters had came [sic] to her and disclosed that both of them had been made to watch pornography with their father and [sic] while he grinded on them." Tr. p. 387. McGuire testified he immediately set up a CARE House interview for A.J., who was 15 at the time, because she was a minor; McGuire observed the interview from another room. Because M.H. was over 18, McGuire conducted an interview of her at the Kettering Police Department. McGuire testified that both M.H. and A.J. disclosed allegations of sexual abuse during their interviews.

{¶ 12} McGuire further testified he then began trying to "find the actual facts that [would] corroborate or refute" the allegations made by the sisters. Tr. p. 395. He found

a record maintained by the police department which indicated that a call had been made to the department in 2017; the call record stated "check on the welfare of a 14-year-old, [A.J.], possible abuse by her father, sister in Virginia has photos." Tr. p. 398. McGuire testified that the record indicated that the police responded to the home, but no further report was made. When asked whether the call was handled properly, McGuire responded, "if it's serious enough for Children Services to get involved, then they should have done some more follow up. Because quite often bruising doesn't take place in the initial --." Tr. p. 399. At that point, the trial court, sua sponte, asked counsel to approach the bench. Following a discussion, the State did not ask any more questions about the 2017 incident.

{¶ 13} McGuire also interviewed Jordan, who stated that he did "allow the kids to tickle his back with his shirt off, that it gave him goosebumps and it probably was inappropriate." Tr. p. 402. Jordan "also said he did struggle with pornography addiction that he was seeking help for." *Id.* Jordan stated he believed the girls had made accusations against him because they hated him due to the fact he was the disciplinarian in the house.

{¶ 14} Jordan was convicted of all counts except for one count of gross sexual imposition (by force) as set forth in Count 12 of the indictment, which related to the incident at the Schuster Center. He was sentenced to an aggregate prison term of 28 years to life and was designated a Tier III and Tier II sex offender. Jordan appeals.

## II.     Miceli's Testimony

{¶ 15} Jordan's first assignment of error states as follows:

THE TESTIMONY OF DR. MICELLI [SIC], WHO TESTIFIED BOTH AS AN EXPERT AND AS THE PRIMARY THERAPIST FOR A.J., IMPERMISSIBLY BOLSTERED HER TESTIMONY

{¶ 16} Jordan asserts that the trial court erred by permitting Miceli to testify at trial. He argues that her testimony that A.J.'s behavior was consistent with behavior observed in other sexually-abused children impermissibly bolstered A.J.'s testimony. He further challenges Miceli's testimony regarding a test she administered to A.J.; Jordan claims Miceli improperly diagnosed A.J. with post-traumatic stress disorder (PTSD) based upon the results of that test. Finally, he contends Miceli failed to establish that the diagnosis of PTSD was causally related to the alleged sexual abuse.

{¶ 17} An appellate court reviews the admission of expert testimony for an abuse of discretion. *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 30. The term "abuse of discretion" suggests the trial court acted unreasonably, arbitrarily, or unconscionably. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9.

{¶ 18} Evid.R. 702 governs the admissibility of expert testimony, and it provides that a witness may testify as an expert if "(A) the witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; [and] (C) The witness' testimony is based on reliable scientific,

technical, or other specialized information. * * * ”

**{¶ 19}** Jordan does not claim that Miceli was not qualified as an expert. This court has previously recognized Miceli's credentials, stating that she "possesses extensive formal education and broad, deep experience with sexually abused children." *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 40, citing *State v. Bell*, 176 Ohio App.3d 378, 891 N.E.2d 1280, 2008-Ohio-2578 (2d Dist.). Thus, the trial court did not abuse its discretion in designating Miceli as an expert in child sexual abuse and child psychology.

**{¶ 20}** Jordan first argues that Miceli impermissibly bolstered A.J.'s credibility by testifying that A.J. exhibited characteristics normally observed in sexually abused children. In his argument, he appears to conflate testimony bolstering a witness's testimony with testimony from an expert that vouches for a witness's veracity. Ohio law holds that an expert cannot "offer a direct opinion on whether a child is telling the truth." *State v. Artz,* 2015-Ohio-5291, 54 N.E.3d 784, ¶ 57 (2d Dist.), citing *Rosas* at ¶ 42, citing *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), syllabus. However, there is a distinction "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child has been abused." *State v. Stowers*, 81 Ohio St.3d 260, 262, 690 N.E.2d 881 (1998). In other words, an expert witness may bolster a witness's testimony but may not vouch for his or her veracity.

**{¶ 21}** Further, an expert psychologist's training and professional experience provide the expert with specialized knowledge of the kind recognized under Evid.R. 702

-- which the average person lacks -- about behavioral characteristics of minor victims of sexual abuse. . *Bell* at ¶ 56, citing *Stowers.* Thus, the Ohio Supreme Court has held a psychologist's testimony that the behavior of an alleged victim of sexual abuse is consistent with behavior observed in other sexually-abused children is admissible under Ohio's evidentiary rules. S*towers* at 262. Thus, an expert may provide testimony "which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *Id.* at 262-63.

{¶ 22} We have reviewed Miceli's testimony and note that she never offered an opinion concerning whether A.J.'s allegations of abuse were truthful, nor did she offer an opinion that A.J. had, in fact, been abused. Miceli merely offered her opinion regarding the wide range of behavioral characteristics displayed by minor victims of sexual abuse. The law clearly permits this kind of expert testimony, and Miceli did not go beyond permissible boundaries and opine whether A.J. was in fact abused by Jordan. Thus, we cannot conclude that she improperly vouched for the veracity of A.J.'s testimony.

{¶ 23} We next address the test, referred to as the Trauma Symptom Checklist for Children ("TSCC"), which Miceli administered to A.J. Jordan contends there was insufficient foundation regarding the validity of this test. In conjunction, he claims Miceli erred in using the test results to determine that A.J. suffered from PTSD.

{¶ 24} At trial, Jordan did not raise any objections to the validity of the test or its use in evaluating sexually abused children. Thus, he has waived all but plain error in this regard. Plain error exists when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978),

paragraph two of the syllabus. "The Ohio Supreme Court has made it clear that "plain error" under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.* at syllabus 3.

**{¶ 25}** Micelli testified that the TSCC is a "self-report measure" given to children ages eight to 15 or 16 that "lists a bunch of thoughts and feelings and behavior." Tr. p. 212. Children rate how often they have any of these thoughts, feelings and behaviors, and a score is derived from the ratings. Miceli testified the TSCC has been "normed on thousands of kids so it's a well-validated instrument that's used frequently in assessing how a kid's doing following a traumatic event." Tr. p. 212. In our view, this testimony was sufficient to establish the validity of the TSCC as used to assess minor victims of abuse.

**{¶ 26}** Further, Miceli testified that she had four separate evaluation sessions with A.J. aimed solely at assessing her mental health issues in order to determine a course of treatment. According to Miceli, the TSCC was merely one piece of information used during the psychological evaluation. At no point did Miceli testify that her diagnosis of PTSD was based upon the results of the TSCC. Instead, she testified that her diagnosis was based upon her entire evaluation of A.J. Thus, we find no merit in the claim that Miceli's diagnosis was improperly based upon an invalid test.

**{¶ 27}** Finally, we address the claim that Miceli failed to testify that A.J.'s PTSD was causally related to the alleged abuse. Miceli testified that her function was not to determine whether a child had been sexually abused; rather, she evaluated A.J. in order to assess whether she had suffered any psychological trauma as a result of the alleged

abuse. At trial, she described various relevant symptoms of PTSD, explained that many of the symptoms had been exhibited by A.J., testified that A.J. suffered from this disorder, and stated that such a diagnosis was widely applied to children who had been sexually abused.

{¶ 28} We find nothing improper about this testimony. *See State v. Bidinost*, 71 Ohio St.3d 449, 644 N.E.2d 318 (1994). As stated above, a psychologist may testify to the characteristics of child abuse victims and may testify that the child in question exhibits such characteristics. This testimony was clearly relevant and helpful in assisting the jury to understand A.J.'s behavior. The fact that Miceli did not relate the diagnosis to any specific act of sexual abuse did not render her testimony improper. Indeed, had Miceli so testified, Jordan could have reasonably argued that she was improperly stating her opinion that the sexual abuse had occurred.

{¶ 29} The first assignment of error is overruled.

### III. Knisley's Testimony

{¶ 30} The second assignment of error asserted by Jordan is as follows:

THE TRIAL COURT ERRED IN ALLOWING JENNIFER KNISLEY TO TESTIFY REGARDING STATEMENTS MADE TO HER BY A.J. DURING THE CAREHOUSE INTERVIEW

{¶ 31} Jordan contends Knisely was improperly allowed to testify regarding statements made by A.J. during the forensic interview. In support, he argues that the statements, which he contends constituted inadmissible hearsay, were erroneously

admitted by the trial court under the hearsay exception set forth in Evid.R. 803(4). Jordan does not specify any particular statements to which he objects.

{¶ 32} "The admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. A court's decision about the admission of evidence is therefore reviewed for an abuse of discretion. *State v. Freeman*, 2d Dist. Greene No. 2020-CA-33, 2021-Ohio-734, ¶ 54, citing *Sage*. Likewise, "hearsay challenges to a trial court's admission of statements from children in sex-abuse cases are reviewed under an abuse-of-discretion standard." *State v. Moore*, 2019-Ohio-1671, 135 N.E.3d 1114, ¶ 21 (2d Dist.), citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 48.

{¶ 33} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible unless an exception applies. Evid.R. 802. As pertinent here, Evid.R. 803 excludes various items from the hearsay rule, "even though the declarant is available as a witness," including "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). The term medical diagnosis includes a mental health diagnosis. *State v. Curtiss*, 2d Dist. Montgomery No. 29006, 2022-Ohio-146, ¶ 108.

{¶ 34} In the context of forensic interviews of child sexual abuse victims conducted at child advocacy centers, the Supreme Court of Ohio has noted that "the interview serves

dual purposes: (1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim. The interviewer acts as an agent of each member of the multidisciplinary team." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33. "In determining whether statements made to a forensic interviewer at a child advocacy center are made for the purpose of medical diagnosis and treatment, as opposed to forensic investigative purposes, the court must 'identify the primary purpose of the statements.' " *State v. Remy*, 2d Dist. Clark No. 2017-CA-6, 2018-Ohio-2856, ¶ 82, quoting *Arnold* at ¶ 28. "Whether the purpose of a child's statements is for medical diagnosis or treatment will depend on the facts of the particular case." *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 73 (2d Dist.), citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 49. "The test for admissibility is whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment." *State v. Nasser*, 10th Dist. Franklin No. 02AP-1112, 2003-Ohio-5947, ¶ 55.

**{¶ 35}** Knisley testified that a forensic interview is basically a "conversation with a child" by a "neutral fact finder." Tr. p. 325. The purpose of the interview is to gather information to assess safety, medical, and mental health needs. She testified that she had been trained in a standard national protocol for conducting forensic interviews. Knisley further testified that she ultimately referred A.J. for both mental health services and a physical examination based upon disclosures A.J. made during the interview.

**{¶ 36}** The trial court found that A.J.'s forensic interview statements were admissible under Evid.R. 803(4) because the statements elicited were for the purposes

of medical diagnosis or treatment. However, Jordan contends that the primary purpose of the interviews was forensic information gathering, not medical diagnosis or treatment.

{¶ 37} We have reviewed Knisley's testimony and find only one statement which was questionable. Specifically, Knisley testified that A.J. had revealed that Jordan would trace the outline of her shorts with his penis.[1] Knisley did not specify how this behavior had a medical or mental impact upon A.J. However, given the totality of Knisley's testimony, this information arguably had a bearing on assessing A.J.'s mental health.

{¶ 38} We cannot say the trial court abused its discretion by permitting Knisely to testify regarding statements made by A.J. Therefore, Jordan's second assignment of error is overruled.

#### IV. McGuire's Testimony

{¶ 39} The third assignment of error states as follows:

THE TRIAL COURT ERRED IN REGARD TO DETECTIVE KEVIN MCGUIRE'S TESTIMONY.

{¶ 40} In this assignment of error, Jordan first asserts the trial court erred when it allowed McGuire to testify that Mother had informed him "that her daughters had came [sic] to her and disclosed that both of them had been made to watch pornography with their father and [sic] while he grinded on them[.]" Jordan contends this statement was inadmissible hearsay. The State argues McGuire's testimony was offered not for the truth of the matter asserted but, instead, to explain McGuire's conduct in scheduling a

---

[1] Jordan did not object to this particular statement, thus, he has waived all but plain error.

CARE House interview for A.J.

{¶ 41} As stated earlier, hearsay is "a statement, other than one made by the declarant while testifying * * * offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "But if a statement is offered for another purpose, then it is not hearsay and is admissible." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028. ¶ 169, citing *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118. "The trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception." *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992).

{¶ 42} Because "extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed[,]" *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980), it is well-established that "[l]aw-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." *Beasley* at ¶ 172, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186. However, because there is potential for abuse in admitting such statements, the Ohio Supreme Court has imposed certain conditions that must be met before this type of statement may be admitted. "Testimony to explain police conduct is admissible as nonhearsay if it satisfies three criteria: (1) the conduct to be explained is relevant, equivocal, and contemporaneous with the statements, (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) the statements do not connect the accused with the crime charged." *Id.*, citing *State v. Ricks*,

136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

**{¶ 43}** McGuire could have explained how he pursued his investigation without linking Jordan to the crimes. *See State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 36, citing *Ricks* at ¶ 51 (French, J., concurring in judgment only), citing 2 McCormick, Evidence, Section 249, at 193-195 (7th Ed.2013) ("It is usually possible to explain the course of an investigation without relating historical aspects of the case, and in most cases, testimony that the officer acted 'upon information received,' or words to that effect, will suffice"). Here, because McGuire's testimony clearly connected Jordan to the crimes, it did not satisfy the criteria for a nonhearsay determination. *Clinton* at ¶ 136-137; *State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 21; *State v. Blanton*, 184 Ohio App.3d 611, 2009-Ohio-5334, 921 N.E.2d 1103, ¶ 43.

**{¶ 44}** Having reached this conclusion, we must now determine whether the error was harmless beyond a reasonable doubt. As noted, both A.J. and M.H. testified at trial and both testified to behavior by Jordan matching the behavior described by Mother to McGuire. Given this evidence, we cannot say there is a reasonable probability the outcome of Jordan's trial would have been different if the disputed testimony had been excluded. *See Clinton* at ¶ 138.

**{¶ 45}** Jordan next complains McGuire was improperly permitted to testify regarding the above-cited 2017 police report which contained an allegation of abuse. Jordan does not state the basis for his claim that this testimony was improper. Further, we note that Jordan did not object to any of McGuire's testimony on this subject or request a limiting instruction. Instead, the trial court, acting sua sponte, advised counsel to

discontinue the line of questioning. Thus, we review this issue under a plain error standard.

**{¶ 46}** Presumably, Jordan objects to the introduction of the report as evidence of prior bad acts. Such evidence may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner. *State v. Smith*, 49 Ohio St.3d 137, 140, 551 N.E.2d 190 (1990). However, Evid.R. 404(B) permits other-acts evidence for other purposes, including but not limited to the purposes identified in the rule. *Id.* The rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶ 47}** A trial court's decision regarding the admissibility of other-acts evidence is an evidentiary determination that rests within the sound discretion of the trial court. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. "Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *Id.*

**{¶ 48}** Both A.J. and M.H. testified that the sexual abuse had been ongoing for years. A.J. also testified that, in her initial forensic interview with Knisley, she did not disclose all of the abuse she had suffered. She testified that her failure to disclose was due, in part, to her fear that she would not be taken seriously and that nothing would be done following an investigation. She further testified that she was afraid Jordan would

"be let free and hurt [her]" for speaking about the abuse. A.J. based this fear upon the fact that the filing of the prior police report had not stopped the abuse.

{¶ 49} The trial court reasonably concluded that the testimony regarding the prior report was proper as it tended to corroborate A.J.'s testimony regarding her reluctance to disclose information. Further, the testimony of A.J. and M.H., if believed, was sufficient to establish Jordan's guilt. Thus, the admission McGuire's testimony regarding the prior report did not constitute plain error. *See State v. Barton*, 71 Ohio App.3d 455, 594 N.E.2d 702 (1991).

{¶ 50} Finally, Jordan asserts that McGuire was improperly permitted to testify that he had been able to corroborate "a number of details" given to him by A.J. and M.H. Jordan argues this testimony was prejudicial because it vouched for the veracity of the victims.

{¶ 51} We have reviewed this portion of the transcript. McGuire's testimony did not constitute a statement that Jordan had committed the crimes. Instead, it merely indicated that some of the details given by the victims had been corroborated. For example, McGuire testified he was able to ascertain that there was a showing of the Phantom of the Opera at the Schuster Center on the date A.J. claimed. He further verified that Jordan was either living in the house or had access to the children during the periods of abuse.

{¶ 52} Again, witness testimony is permitted to bolster a victim's testimony but a witness may not vouch for a victim's veracity. The cited statement by McGuire merely bolstered the testimony of A.J. and M.H. Therefore, we find no error, let alone plain error,

in this regard.

{¶ 53} The third assignment of error is overruled.


## V.　Cumulative Evidence

{¶ 54} The fourth assignment of error states as follows:

THE CUMULATIVE FORENSIC INTERVIEW EVIDENCE WAS PREJUDICIAL.

{¶ 55} Jordan contends the trial court erred by admitting the testimony of Knisely and McGuire, which he claims was cumulative to A.J.'s own testimony regarding the allegations of sexual abuse. Jordan asserts he was unfairly prejudiced because this testimony "amounted to 'vouching' for the veracity of [A.J.]."

{¶ 56} "Cumulative evidence" is defined as "additional evidence of the same kind to the same point." *State v. Jali*, 2d Dist. Montgomery No. 28294, 2020-Ohio-208, ¶ 41, quoting *Kroger v. Ryan*, 83 Ohio St. 299, 94 N.E. 428 (1911), syllabus. According to Evid.R. 403(B), "it is within the sound discretion of the trial court to exclude cumulative evidence only when the probative value of the evidence is substantially outweighed by the danger of a material prejudice to the defendant." *State v. Arrone*, 2d Dist. Greene No. 2005-CA-89, 2006-Ohio-4144, ¶ 152. "The mere fact that evidence is repetitive will not be considered reversible error unless the defendant was unfairly prejudiced thereby." *State v. Baker*, 2d Dist. Montgomery No. 23933, 2011-Ohio-1820, ¶ 16, quoting *State v. Smith*, 80 Ohio St.3d 89, 108-109, 684 N.E.2d 668 (1997). "The pertinent question is whether the evidence was unfairly prejudicial to the defendant, not whether it was

unfavorable to him." *Id.*

**{¶ 57}** We begin by noting that we cannot find, and Jordan has not cited, any portion of McGuire's testimony relating statements made by A.J. during the CARE House interview. Further, while Knisley's testimony regarding the statements by A.J. may have been cumulative, it was not needlessly cumulative because it provided useful information to the jury. Finally, we again conclude Jordan has failed to demonstrate that this testimony vouched for the veracity of A.J.

**{¶ 58}** Jordan has failed to demonstrate how he was materially prejudiced by the cumulative nature of the evidence. While the testimony may have been unfavorable to Jordan, it was not unfairly prejudicial.

**{¶ 59}** The fourth assignment of error is overruled.

## VI.     Conclusion

**{¶ 60}** All of Jordan's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
J. David Turner
Hon. Gerald Parker