[Cite as *State v. Sibrian*, 2017-Ohio-2613.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27041 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-2076 |
| | : | |
| OSWALD SIBRIAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of April, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARK WIECZOREK, Atty. Reg. No. 0082916, 212 West 8th Street, #300, Cincinnati, Ohio 45202
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Oswald Sibrian, appeals from his conviction and sentence on three counts of Rape of a person under the age of 13, and one count of Gross Sexual Imposition of a person under the age of 13. After being convicted by a jury Sibrian was sentenced to a total of 15 years to life in prison on the charges.

{¶ 2} In support of his appeal, Sibrian contends that the trial court erred in allowing a State's witness to testify about sexual abuse disclosures when the witness was neither qualified nor tendered as an expert. In addition, Sibrian contends that the trial court erred in admitting expert testimony when the expert failed to state the basis for her opinion.

{¶ 3} Sibrian further contends that the trial court erred in admitting laboratory reports in violation of R.C. 2925.51, that the convictions were against the manifest weight of the evidence, and that cumulative errors denied him a fair trial.

{¶ 4} We conclude that the trial court should not have admitted the laboratory report, as R.C. 2925.51 does not apply to the violations with which Sibrian was charged. However, the error was not prejudicial. In addition, we conclude that the trial court did not err in admitting testimony about sexual abuse, nor was there any error in failing to qualify the witness as an expert in sexual abuse.

{¶ 5} We further conclude that two Rape convictions (Counts II and III), and the Gross Sexual Imposition conviction (Count IV) were against the manifest weight of the evidence. The remaining Rape conviction (Count I) was not against the manifest weight of the evidence. Finally, we conclude that no cumulative error occurred requiring a new trial. Accordingly, the judgment of the trial court will be reversed in part and affirmed in part. The convictions and sentences for Counts II, III and IV will be vacated and

reversed, and this matter will be remanded for further proceedings.

## I. Facts and Course of Proceedings

**{¶ 6}** In July 2015, Oswald Sibrian was indicted on three counts of Rape of a person under the age of 13 and two counts of Gross Sexual Imposition of a person under the age of 13. The time frame of the offenses alleged in the indictment was between late May 2012, through late May 2014, during which time the alleged victim, Mary Doe,[1] would have been from 11 to 13 years old.[2]

**{¶ 7}** The charges arose from conduct that allegedly occurred during the time that Sibrian and his wife, Angela, babysat for Mary and her older brother, Steven Doe, who was born in 1997. When Steven was a baby, Mary's father, John Doe, hired Angela to watch him. At the time, John's family lived in the Dayton area, and Angela and Sibrian lived in Springboro, Ohio, with Angela's family.

**{¶ 8}** Sibrian was born in April 1981, and married Angie in March 2000. After being released from the military in July 2001, Sibrian became involved in helping with the children's care almost from the time of Mary's birth. Mary testified that she saw Angie and Sibrian from three to five days per week. The Sibrians were like second parents, and Mary and Sibrian were very close. From time to time, the Sibrians stayed overnight

---

[1] For purposes of privacy, we will refer to the victim as "Mary Doe," or "Mary." This name has no connection to the victim's real name or initials. We will also refer to her brother as Steven Doe, and her father as John Doe. Again, these names have no connection to their real names or initials.

[2] The indictment listed specific dates in May, but we have eliminated any reference to those specific dates as well as any reference to the victim's actual birthdate. However, the victim would have been between 11 and 13 years old at the times listed in the indictment.

at Mary's home while her parents were on trips.

{¶ 9} According to Mary, Sibrian touched her under her clothing in her vaginal area, when she was six or seven years old, around 2007 or 2008. This happened in the basement of Mary's family home, and she did not tell her parents. She also related another incident that took place in her bedroom in 2011, when her bedroom was painted pink.[3] Mary testified that Sibrian put his penis into her "butt" and ejaculated. Again, she did not tell anyone.

{¶ 10} Mary recalled another specific incident that occurred in the basement guest room of Mary's home, between 6th and 7th grade. (Mary would have begun 6th grade in around August or September 2012, when she was 11 years old, and would have begun 7th grade in August or September 2013, when she was 12 years old). At that time, Sibrian again put his penis in her butt. Just before doing that, he used a metal, bullet-shaped vibrator on her. This was not the first time he had used a vibrator on her. She further stated that after the time in the guest bedroom, it continued to happen.

{¶ 11} The next specific occasion Mary recalled occurred in a room called the "man cave," on the main floor of Mary's home. Mary stated that it occurred more recently than the 6th or 7th grade incident, and definitely after 2012. At that time, Mary and Sibrian were watching a movie. Sibrian gave her a pink vibrator to use this time, and after that, it progressed to Sibrian placing his penis in her butt again. That time, Sibrian ejaculated in his hand. Mary stated that this would also happen in her bedroom, her parents' room, the man cave, the living room, and the guest room in the basement. Sibrian also used

---

[3] The date was prior to July 2011, because Mary's father testified that her bedroom was painted blue in July 2011. As a result, this particular incident occurred prior to the dates listed in the indictment.

other vibrators on her, including one that was white and shaped like a mushroom.   On another specific occasion, which occurred in her parents' bedroom (and is the third Rape alleged by the State), Mary did not recall Sibrian having sexual relations with her, but they both used the vibrator on her vagina.

{¶ 12} In addition, Mary related an occasion when Sibrian had her touch his penis in the shower in her parents' bedroom.   She believed he tried to have sex with her again, but it did not work, so he had her manipulate his penis by hand.   During her testimony, Mary also described Sibrian's penis as uncircumcised.

{¶ 13} In May 2015, Mary went to see a counselor because she was having some trouble with her parents, who were fighting a lot.   She told the therapist briefly about what had happened with Sibrian, but did not give details.   She was unaware the therapist would tell anyone.

{¶ 14} Mary also related that she had previously used marijuana.   She stated that the first time she remembered using marijuana was prior to fourth grade, in her basement. The marijuana was in a plastic baggie, and Sibrian said it was relaxing medicine.   She recalled using it through a green pipe that Sibrian had.   She also stated that Sibrian had given her a clear capsule with crystals, when she was 13 or 14.   Mary recalled Sibrian saying he used it for concerts.   After she took it, she could not move at all, and Sibrian had to help her go to the bathroom.

{¶ 15} In addition, Sibrian gave her greenish/brownish wax candy.   She knew it was marijuana at the time.   It was really bad, and she threw up in the driveway.   Sibrian also gave her alcohol, and supplied her with Vape, which is vaporized water.   However, Vape cannot be purchased by people under 18 years of age.   Mary further admitted

using marijuana with her brother and a friend.

{¶ 16} After Mary met with the therapist in May 2015, she did a video interview at CARE House. Detective Ridgeway of the Montgomery County Sheriff's Office observed the interview and completed an initial report. During the interview, Mary told investigators about the marijuana Sibrian had given her, and that Sibrian had sex with her in her butt. At trial, Mary testified that she did not really remember what she said during the interview. She admitted saying that sometimes Sibrian used a condom, but stated that she was unsure when she told investigators that fact. Mary indicated that she did not think she had made it up, but she did not know. She also admitted that sometimes she stretched the truth.

{¶ 17} During cross examination, Mary was asked if she had said during the Care House video that Sibrian had sex with her in her butt a "couple times." She stated that she had said, "Multiple times, yes," and then indicated that she did not know if she said it was a couple or not. Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), pp. 68-69. Mary also admitted stating during the investigation that Sibrian had used her mother's sex toy, which was a purple/pink vibrator, on her. There were more than three vibrators. In addition, she told investigators that Sibrian had said that all the vibrators he used on her were bought at Hustler. During the video made at CARE House, Mary did not mention Sibrian ejaculating.

{¶ 18} After interviewing Mary and doing some follow-up investigation, Detective Ridgeway obtained a search warrant for Sibrian's address in Springboro. Ridgeway identified various photos and items found in Sibrian's bedroom. One item was a light blue and white box labeled "Body Wand." On the right-hand side of the box and on the

top, there were drawings of a body-wand massager, which was exactly what Mary had described in an interview – a vibrator with a mushroom-type head and a longer white handle with a cord. The box was in Sibrian's bedroom, under a wrought-iron television stand. A barcode on the box included the term "Hustler of Hollywood." *Id.* at p. 94. The actual body wand was never found, but Ridgeway did find other vibrators or sex toys in Sibrian's bedroom, including a pink and purple vibrator.

{¶ 19} Ridgeway also found a baggie containing a leafy green substance; a green glass pipe; a green taffy-like substance wrapped in aluminum foil; and two or three capsules that appeared to contain a crystal-like substance similar to rock salt or a driveway salt. Any items that could have been drugs were sent to the Miami Valley Regional Crime Lab.

{¶ 20} Prior to trial, the court and prosecutor asked Ridgeway to visually inspect Sibrian's genitals. Ridgeway testified that he did not see any type of birthmark or specific marks, but stated that Sibrian was not circumcised.

{¶ 21} On the first day of trial, prior to voir dire, the State moved to amend the indictment. The prosecutor attempted to expand the dates of offenses to include the time period from late May 2007 through late May 2014.[4] Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), p. 6. The State conceded that the failure to include the dates was an oversight rather than a typographical error. *Id.* at p. 7. The prosecutor argued that unless the court granted the motion, there was a possibility that some charges might be outside the indictment time frame. *Id.* at p. 7.

{¶ 22} In addition, the State argued that if the Court overruled the motion, one

---

[4] Again, we have eliminated the specific date in May that the State referenced.

count of GSI would have to be dismissed and "one of the other rapes would be questionable in terms of getting it within the 2012 start date." *Id.* The court denied the motion, stating that:

> The Court is going to deny your request to amend the indictment. I do not think it falls within the purview of Rule 7, and I do not think in a sense of fairness that it's fair to the defendant. You've had ample opportunity to prepare the indictment, and I do not think it's the intent or the - - I don't think it's the intent of the rule to allow you to come in on [the] day of trial. It's such a case wouldn't you have known about the history of this case for a while.
>
> So, I'm going to deny the amendment of the complaint. However, if you need to lay a foundation of the other acts, I certainly will permit that, but when the case goes back to the jury it will have to be between those dates listed in the indictment.

*Id.* at p. 9.

{¶ 23} The State did not cross appeal this ruling.

{¶ 24} At trial, Dr. Brenda Miceli, a pediatric psychologist employed at Dayton Children's Hospital, testified at length about the dynamics of sexual abuse in children. Dr. Miceli had not examined Mary, and was not formally qualified by the State as an expert, although her credentials were discussed in great detail.

{¶ 25} Sibrian testified in his own behalf. During his direct examination, he admitted smoking marijuana on a daily basis, and using the illegal drugs Ecstasy and MDMA. He kept marijuana and Ecstasy in his bedroom drawer, and only used Ecstasy

when he went to festivals and concerts with friends. This was the same bedroom where Mary would be when she visited the Sibrian household.

{¶ 26} Sibrian further testified that he knew prior to trial that Mary had consumed alcohol and had smoked marijuana with her brother and a friend. Sibrian stated that he told Mary's mother about that, and his relationship with Mary then became strained. He further claimed that Mary had learned of his lack of circumcision during a conversation with Angela about sex education. In addition, he presented pictures of his penis, to indicate that his penis was not perfectly straight, as Mary had testified.

{¶ 27} Sibrian denied ever smoking marijuana or having the green pipe at Mary's house. He did admit that he had purchased a VAPE for Mary and did not tell Mary's mother about it. Sibrian also denied ever raping Mary or using a vibrator on her. The last contact Sibrian had with Mary was on June 8, 2015, when she texted him.

{¶ 28} As was noted, in late July 2015, Sibrian was indicted for three counts of Rape of a person under age 13, and two counts of Gross Sexual Imposition of a person under age 13. He was tried on the three Rape counts, but only one Gross Sexual Imposition count, as the State dismissed Count V. The jury found Sibrian guilty of all charges, and he was sentenced as stated above. Sibrian appeals from his convictions and sentences.


II. Error in Allowing Expert to Testify

{¶ 29} We will consider the First and Second Assignments of Error together because they are interrelated. Sibrian's First and Second Assignments of Error state that:

The Trial Court Erred in Permitting Dr. Miceli to Testify Regarding Disclosures of Sexual Abuse When She Was Neither Qualified as an Expert Under Evid.R. 702 Nor Tendered as an Expert.

The Trial Court Erred in Admitting Expert Testimony When the Expert Failed to State the Basis of Her Opinions Under Evid. R. 703 and Evid. R. 705.

{¶ 30} Under these assignments of error, Sibrian contends that the trial court committed error in allowing Dr. Miceli to testify about delayed reporting of sexual abuse by children and the relationship between children and their abusers, without the State having qualified or tendered Dr. Miceli as an expert in the field of child sexual abuse.  In addition, Sibrian contends that the trial court erred in admitting Dr. Miceli's testimony because she answered general questions only and did not have any contact with Mary or review any records in the case.

{¶ 31} In responding, the State argues first that Sibrian waived all but plain error by failing to object in the trial court.  The State also argues that Dr. Miceli was adequately qualified and that her testimony on behavioral characteristics of sexually abused children was both admissible and helpful to the jury.

{¶ 32} The State is correct that Sibrian did not object at trial to admission of Dr. Miceli's testimony, to her qualifications, or to any failure to move her admission as an expert.  "Normally, the failure to timely object at trial to allegedly inadmissible evidence waives all claims of error except for plain error."  (Citation omitted.)  *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶ 19 (2d Dist.).  Plain error does not exist "unless, but for the error, the outcome of the trial clearly would have been

otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). After reviewing the record, we see no error or plain error justifying reversal based on Dr. Miceli's testimony.

{¶ 33} Evid.R. 702 provides that:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

{¶ 34} Our review of the record indicates that Dr. Miceli is very qualified and presented information about sexual abuse that would have aided the jury. We have previously rejected challenges to Dr. Miceli's testimony about "the behavioral characteristics of children who have been sexually abused." *State v. Artz*, 2015-Ohio-5291, 54 N.E.3d 784, ¶ 53-63 (2d Dist.) (overruling challenges based on Evid.R. 702, Evid.R. 703, and Evid.R. 705).

{¶ 35} The grounds upon which Sibrian relies are essentially identical to those discussed in *Artz*, and our review of the record here indicates that the testimony Dr. Miceli

offered is very similar to testimony that we have previously approved.

{¶ 36} In *Artz*, we observed that "[t]he instant case is analogous to *Zimpfer*, *Cox*, and *Bell* in that Dr. Miceli never offered her opinion as to whether the abuse occurred and her testimony was simply an aid for the jury to better understand the characteristics of child abuse. Dr. Miceli's testimony establishes that she possesses an extensive formal education on the subject of child abuse and that she has an extensive history working with sexually abused children." *Id.* at ¶ 61, citing *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, *State v. Cox*, 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, and *State v. Bell*, 176 Ohio App.3d 378, 2008-Ohio-2578, 891 N.E.2d 1280 (2d Dist.). Likewise, the record in the case before us indicates that Dr. Miceli has a lengthy and significant history of working with children who have been sexually abused.

{¶ 37} Furthermore, as in *Artz*, *Zimpfer*, *Bell*, and *Cox*, Dr. Miceli did not offer an opinion about whether Mary had been abused. Instead, she limited her testimony to "a specialized overview of particular behavioral characteristics of sexually abused children in order to give the jurors a better understanding of those characteristics." *Artz* at ¶ 60, citing *Zimpfer* at ¶ 33 and *Cox* at ¶ 56. *See also Bell* at ¶ 57. In *Artz*, we also found it irrelevant that Dr. Miceli knew nothing about the victims, "as her testimony was limited to the behavioral characteristics of sexually abused children and their abusers." *Id.* at ¶ 61.

{¶ 38} Moreover, in *Artz*, we rejected the defendant's contention that the State had called Dr. Miceli solely to bolster the victims' testimony. *Id.* at ¶ 62. Sibrian makes the same argument here, contending that Dr. Miceli's testimony caused the jury to give greater weight to Mary's testimony, which was allegedly filled with gaps, inconsistencies, and untruths.

**{¶ 39}** We stressed in *Artz* that "there is a distinction 'between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child has been abused.' " *Artz*, 2015-Ohio-5291, 54 N.E.3d 784, at ¶ 62, quoting *State v. Stowers*, 81 Ohio St.3d 260, 262, 690 N.E.2d 881 (1998). (Other citation omitted.). We stressed that expert testimony is admissible in the latter situation. *Id.*, citing *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 42.

**{¶ 40}** We went on to note that "testimony that provides 'additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity' is admissible." *Artz* at ¶ 62, quoting *Stowers* at 262. We stressed that this type of testimony " ' "does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination." ' " *Id.*, quoting *Stowers* at 263. (Other citation omitted.)

**{¶ 41}** We have carefully reviewed the record in the case before us and have compared it to the testimony described in the cited cases (*Artz, Zimpfer, Bell,* and *Cox*). Seeing no appreciable differences in the testimony permitted in any of these cases, we conclude that no plain error, let alone any error, occurred in connection with the admission of Dr. Miceli's testimony. Accordingly, the First and Second Assignments of Error are overruled.

### III. Alleged Error in Admitting Laboratory Reports

**{¶ 42}** Sibrian's Third Assignment of Error states that:

The Trial Court Erred in Admitting Laboratory Reports in Violation of

R.C. § 2925.51.

{¶ 43} Under this assignment of error, Sibrian contends that the trial court erred in admitting a laboratory report (State's Ex. 12) into evidence under R.C. 2925.51.  This statute allows certified copies of laboratory reports to be admitted into evidence in drug offenses and controlled substances offenses where the defense is given a copy of the report and fails to demand the appearance and testimony of the person signing the report within seven days after receipt.  Sibrian contends this was an abuse of discretion because he was not charged with any violations of R.C. Chapter 2925 or R.C. Chapter 3719, and these are the only offenses to which R.C. 2925.51 applies.

{¶ 44} The State concedes error in admission of the exhibit, but contends that Sibrian failed to properly object to admission of the report without the analyst's testimony. The State, therefore, contends that the plain error doctrine applies.  After making these observations, the State goes on to discuss issues pertaining to the Confrontation Clause and harmless error.

{¶ 45} As was noted above, Detective Ridgeway stated that he sent some items from Sibrian's home to the Montgomery County Crime Lab for testing. He did not elaborate on the results of the tests.  At the end of the State's case, the State moved to admit the laboratory report, which showed that some items tested positive for marijuana, hashish, or methylenedioxymethcathinone.

{¶ 46} Contrary to the State's assertion, the defense did object to admission of the report.  In this regard, the defense first stated that R.C. 2925.51 did not apply, because drugs were not an element of the crimes charged.  Excerpted Transcript of Proceedings filed with the Court of Appeals on August 16, 2016, p. 5.  In addition, the defense argued

that the lab report was not relevant. *Id.*

{¶ 47} After the defense initially objected on the basis that R.C. 2925.51 did not apply, the following further exchange also occurred between the trial court and Sibrian's counsel:

THE COURT: Mr. Wieczorek, you are familiar with the statute of 2925.51 requiring that you can demand the testimony of analysis upon the prosecutor, and your objection is based upon this does not apply to this particular case?

MR. WIECZOREK: My objection is under 403, Your Honor, that it's not relevant, and only relevant evidence should be admitted at trial. We would object and say that the lab report's not relevant to the facts of the case here today.

*Id.* at p. 5.

{¶ 48} Following this exchange, the trial court concluded that the evidence was relevant because there was testimony about drug usage, and the defense had first brought up the issue of drugs when cross-examining Mary. *Id.* at p. 6.

{¶ 49} We agree with both the State and Sibrian that admitting the exhibit was an error. R.C. 2925.51 states, in pertinent part, that:

(A) In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation, a laboratory operated by another law enforcement agency, or a laboratory established by or under the authority of an institution of higher education that has its main campus in

this state and that is accredited by the association of American universities or the north central association of colleges and secondary schools, primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substances.

* * *

(C)   The report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report.   The time may be extended by a trial judge in the interests of justice.

{¶ 50} There is no dispute that Sibrian received the report as required by the statute and did not request live testimony.   Excerpted Transcript of Proceedings filed with the Court of Appeals on August 16, 2016, p. 4.   However, as both sides note, the current prosecution was not for violations of R.C. Chapter 2925 or R.C. 3719, and R.C. 2925.51 does not apply.

{¶ 51} In *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, the Supreme Court of Ohio held that regardless of whether a laboratory report was testimonial, the defendant had "validly waived his right to cross-examine the analyst by failing to exercise the opportunity to demand the analyst's testimony afforded by R.C. 2925.51." *Id.* at ¶ 12.[5] However, *Pasqualone* involved a charge of drug possession, which fit within the parameters of R.C. 2925.51. *Id.* at ¶ 5.

{¶ 52} Subsequently, in *State v. Syx*, 190 Ohio App.3d 845, 2010-Ohio-5880, 944 N.E.2d 722 (2d Dist.), we declined to apply the requirements of R.C. 2925.51 to a situation involving an OVI charge under R.C. 4511.19(A)(1)(a). *Id.* at ¶ 31. We reasoned that R.C. 2925.51 did not apply to prosecutions under R.C. 4511.19, and that we could not rewrite legislation and impose requirements. We sustained an assignment of error based on the improper admission of laboratory results, and ultimately concluded that the defendant's conviction must be reversed, because without admission of the blood test results, there was no proper foundation for the expert's testimony about the effects of blood alcohol. *Id.* at ¶ 37.

{¶ 53} The same reasoning applies to the case before us. Even though Sibrian was notified about the test results and failed to demand testimony about the results, he was not required to do so, because R.C. 2925.51 did not apply. The State, therefore,

---

[5] When *Pasqualone* was decided, the issue of whether such reports of forensic analysis were testimonial was pending before the United States Supreme Court. *Pasqualone* at ¶ 12, fn. 4. The court concluded that the pending decision would not affect the case because its decision was based on waiver, not the Confrontation Clause. *Id.* at fn. 4. Shortly thereafter, the Supreme Court settled the issue, concluding that "[t]here is little doubt that the documents at issue in this case fall within the 'core class of testimonial statements' " described in the Confrontation Clause. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

would have had to produce testimony (or obtain a stipulation from the defense) before the laboratory results could have been admitted into evidence, and the trial court erred in admitting the report. However, the real issue is whether the error was prejudicial, requiring reversal of Sibrian's convictions.

{¶ 54} "Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: 'Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.' Under the harmless-error standard of review, 'the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant.' (Emphasis sic.)" *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 36, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. (Other citation omitted.)

{¶ 55} "In most cases, in order to be viewed as 'affecting substantial rights,' ' "the error must have been *prejudicial*." (Emphasis added.)' " *Id.*, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. (Other citation omitted.) "Accordingly, Crim.R. 52(A) asks whether the rights affected are 'substantial' and, if so, whether a defendant has suffered any prejudice as a result." (Citation omitted.) *Id.*

{¶ 56} In *Harris*, the court noted that in *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, it had "dispensed with the distinction between constitutional and non-constitutional errors under Crim.R. 52(A)." *Id.* at ¶ 37, citing *Morris* at ¶ 22-24. The court further stated that:

> In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined

whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

(Citations omitted.) *Harris* at ¶ 37, citing *Morris* at ¶ 25, 27-29, and 33.

{¶ 57} Applying this standard, we conclude that the error was harmless beyond a reasonable doubt and that the remaining evidence established Sibrian's guilt beyond a reasonable doubt, with the exceptions noted below in our discussion of the manifest weight issue. Notably, in arguing that the trial court erred in admitting the evidence under R.C. 2925.51, Sibrian fails to even mention how the admission of the evidence was prejudicial. Instead, he simply states that the trial court acted unreasonably in admitting the evidence. This is true, and the State concedes error in admitting the evidence. However, the error must still be prejudicial in order for a conviction to be reversed.

{¶ 58} In this regard, we note that Sibrian, himself, introduced the subject of drugs during cross-examination of the victim, Mary. Prior to this time, the State did not question Mary about drugs. During cross-examination, the defense elicited testimony from Mary about the fact that she had smoked marijuana and had consumed alcohol, and had lied to her mother about her brother's alcohol use. Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), pp. 55-56 and 67-68. In the course of this testimony, Mary stated, in response to a defense question, that Sibrian had given her marijuana. *Id.* at p. 55. On redirect examination, the State then asked Mary further

questions about marijuana, during which Mary testified that she had used marijuana with Sibrian, through a green pipe that he had. *Id.* at p. 77. Mary also stated that Sibrian had given her another drug, in a clear capsule with crystals, that he used at concerts, another substance she knew was marijuana, that was in the form of a wax candy, and alcohol. *Id.* at pp. 78-79.

{¶ 59} Even without the evidence from the laboratory report, there was substantial corroborating evidence that was consistent with the drug usage and items that Mary described. When the search warrant was executed on Sibrian's bedroom, officers found a baggie with a green leafy substance, a taffy-like bendable substance wrapped in aluminum foil, and some capsules that appeared to contain a rock-like crystal substance. *Id.* at pp. 94-96. More importantly, the officers found a green pipe in Sibrian's bedroom that was similar to the object Mary described as having been involved in drug usage. *Id.* at p. 95.

{¶ 60} The fact that drugs were actually found in Sibrian's bedroom did not positively reflect on his character. However, he had already elicited testimony himself about drugs when he cross-examined Mary. He also testified about his drug use, including use of Ecstasy at concerts. However, Sibrian's testimony came during his own case, after the court had already admitted Ex. 12, and we do not place significant reliance on his testimony for that reason.

{¶ 61} In addition, with respect to the alleged rapes, Mary described a vibrator that was similar to one pictured on a box found in Sibrian's bedroom. Also consistent with Mary's testimony about what Sibrian had told her, the evidence on the box indicated that the vibrator had been purchased at Hustler. *Id.* at pp. 91-94. Mary further testified that

Sibrian was not circumcised – a fact verified by Detective Ridgeway's inspection. These matters corroborated Mary's testimony and provided evidence supporting Sibrian's convictions beyond a reasonable doubt – at least with respect to one Rape conviction, as will be discussed below.

{¶ 62} Accordingly, since the admission of the evidence was not prejudicial, the Third Assignment of Error is overruled.

IV. Manifest Weight Challenge

{¶ 63} Sibrian's Fourth Assignment of Error states that:

The Convictions Were Against the Manifest Weight of the Evidence.

{¶ 64} Under this assignment of error, Sibrian contends that his convictions were against the weight of the evidence because Mary's testimony was inconsistent and unreliable, as well as vague and unspecific about what allegedly happened or when.

{¶ 65} "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Watson*, 2015-Ohio-4517, 46 N.E.3d 1090, ¶ 21 (2d Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 66} Sibrian was charged with three counts of Rape of a person under age 13, in violation of R.C. 2907.02(A)(1)(b), between late May 2012 and through late May 2014. (Counts I, II, and III of the indictment).[6]   R.C. 2907.02(A)(1)(b) provides, in pertinent part, that:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> * * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 67} R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.   Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶ 68} Count IV of the indictment charged that Sibrian, between late May 2012 and through late May 2014, had sexual contact with a person under the age of 13, in violation of R.C. 2907.05(A)(4).[7]   This statute (Gross Sexual Imposition) provides, in pertinent part, that:

---

[6]  Again, the indictment listed specific dates in May.
[7]  As noted, the indictment listed specific dates in May.

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶ 69}** "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶ 70}** The indictment listed dates for the alleged rapes and the gross sexual imposition as between late May 2012, through late May 2014.[8] Mary's birthdate was in late May 2001, so she would have been between 11 and 13 years of age at the listed times (turning 13 in late May 2014).[9] During her testimony, Mary referred to a chart showing her age and date of school year. For example, during the 2015-2016 school year, Mary was in 9th grade. She would have turned 13 in late May 2014, when she was still in 7th grade.

**{¶ 71}** Mary's direct testimony indicated that sexual abuse began when she was in first or second grade, with the first anal rape occurring in 2011, when her room was still painted pink. This was not within the dates listed in the indictment.

---

[8] *See* footnotes 2 and 6-7.
[9] *See* footnotes 2 and 6-8.

{¶ 72} During the time listed in the indictment, Mary recalled another anal rape in a basement guest room, between 6th and 7th grade. She also testified about a second anal rape after that in the "man cave," more recently than the preceding incident and definitely after 2012; a third incident with a vibrator that also occurred more recently than the rape between 6th and 7th grade; and an occasion when Sibrian attempted to have sex with her in a shower but was unable to, so he made her touch and manipulate his penis. In its brief, the State has indicated that these events, respectively, formed the basis for the convictions on Counts I, II, III, and IV. State's Brief, pp. 13-14.

{¶ 73} During her testimony, Mary testified that these were not the only times anything sexual happened between her and Sibrian – that there were "a lot of times it happened." Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), p. 52. However, she did not testify about any other specific incidents.

{¶ 74} We have said that "[o]rdinarily, the date of the offense is not an essential element of the offense." State v. Bolling, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, ¶ 36, citing State v. Sellards, 17 Ohio St.3d 169, 478 N.E.2d 781 (1985). We further stated in Bolling that "[c]onsequently, an allowance for inexactitude in the date and time of the offense is permissible, and must be made especially in cases involving the sexual abuse of young children where there are several instances of abuse spread out over an extended time period." Id., citing State v. Barnecut, 44 Ohio App.3d 149, 542 N.E.2d 353 (5th Dist.1988), and State v. Mundy, 99 Ohio App.3d 275, 650 N.E.2d 502 (2d Dist.1994). See also State v. Walton, 2d Dist. Montgomery No. 21643, 2007-Ohio-3169, ¶ 10 (noting that "in cases of child sexual abuse, young victims often are unable to remember exact dates and times when the offenses occurred, especially when the crimes

involve a repeated course of conduct over a lengthy period of time.)

{¶ 75} In *Bolling*, we observed that:

C.D. was eight years old when the abuse began and twelve or thirteen when it finally stopped. She could not remember exact dates when the abuse occurred because it had happened too often. Thus, the State was not able to provide more specific dates when the offenses occurred. Defendant does not argue that the imprecision regarding the dates of the offenses prejudiced his defense. Although Defendant filed a notice of alibi consisting of time periods when he worked at different jobs or was out of town, he did not deny that he was alone at times with C.D. during the relevant time periods alleged. Instead, Defendant claimed that the sexual abuse never happened and that C.D. fabricated those allegations to stop Defendant from marrying her mother.

The evidence presented by the State, particularly the testimony by C.D. and her mother, established that Defendant, C.D. and her mother all lived together at Covey Rum apartments from August 1995 to January 1997. Defendant's alleged sexual abuse of C.D. started after her mother went to work in October 1995 and occurred on a regular basis. According to C.D., Defendant inserted his fingers into her vagina every couple days, or once every week or once every month, depending on how frequently Defendant was alone with C.D. This evidence, if believed, and when construed in a light most favorable to the State, is legally sufficient to prove that Defendant raped C.D. at lease [sic] once between September 3, 1996

and December 31, 1996, as charged in count one of the indictment. *Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, at ¶ 37-38.

{¶ 76} Although this discussion in *Bolling* involved sufficiency of the evidence, we also found that the convictions were not against the manifest weight of the evidence. *Id.* at ¶ 43-49.

{¶ 77} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. We have often stressed that "[b]ecause the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). *See also, e.g., Wilson* at ¶ 15; *Artz*, 2015-Ohio-5291, 54 N.E.3d 784, at ¶ 19.

{¶ 78} In *Lawson*, we further stressed that "[c]ontrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in *Thompkins, supra*, [78 Ohio St.3d 380, 678 N.E.2d 541,] we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is

entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence-in short, how persuasive it is." *Lawson* at *4.

{¶ 79} We have reviewed the entirety of the record and find that the convictions are against the manifest weight of the evidence, with the exception of the conviction on Count I. Before discussing this point, we note that even though only excerpts of the record were transcribed and submitted to our court, the State conceded at oral argument that the testimony of all witnesses has been included. As a result, the record is complete for purposes of our discussion.

{¶ 80} As was indicated in our discussion of the Third Assignment of Error, this was largely a case about which party the jury would believe. However, there was evidence, like the green pipe and the vibrator box that came from Hustler, which corroborated Mary's testimony. Sibrian attempted to develop a theory that Mary had fabricated the events in question because she did not get along with her parents, who favored her brother, and also because Sibrian had told Mary's mother about Mary's use of marijuana. The evidence on this issue was not particularly well-developed. In addition, Sibrian's testimony was not very detailed or persuasive. Therefore, the assignment of error is without merit insofar as the first Rape count (Count I) is concerned.

{¶ 81} However, with respect to Counts II and III, the State failed to provide evidence that would allow a jury to conclude that these alleged Rapes occurred prior to the time that Mary turned 13. Although we have allowed certain leeway in proving dates when the abuse occurs repeatedly and over long periods of time with small children, Mary was fourteen years old (nearly fifteen) when she testified, and she was testifying about events that occurred fairly recently. The State chose to charge Sibrian with having raped

a person under the age of 13, and chose the dates listed in the indictment. The State had the burden of giving the jury evidence upon which it could base a decision that the events occurred within the appropriate time frame.

{¶ 82} The first alleged rape that occurred within the dates alleged in the indictment (Count I), occurred, according to Mary, in the basement guest bedroom, either "between 6th and 7th grade," or in "6th or 7th grade * * *." Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), pp. 41 and 46. *See also* State's Brief, p. 13. Assuming that this incident occurred "between 6th and 7th grade," that would have been in the summer of 2013, when Mary was 12. If the incident occurred in 6th grade, that would have been the school year of 2012-2013, when Mary was 11 or 12. If the incident occurred in 7th grade, that would have been the school year of 2013-2014, during which Mary turned 13 in May. Although the time frame was not definite, there was evidence upon which the jury could reasonably have concluded, of the competing inferences, that the alleged rape occurred prior to the time that Mary turned 13, particularly if the jury believed Mary's initial testimony. Accordingly, the conviction for Count I was not against the manifest weight of the evidence based on a lack of time frame of the alleged offense.

{¶ 83} The second alleged rape (Count II) was one that occurred in the "man cave." In this regard, Mary's testimony was that it occurred at some point after the rape that occurred in the guest bedroom. Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), p. 46. In this regard, Mary stated that "I know it was more recent than the 6th or 7th grade incident." *Id.* At that point, the following exchange occurred:

Q. Okay. So it was definitely after 2012.

A. Yes.

*Id.*

**{¶ 84}** The fact that the incident occurred at some point "after 2012," does not provide a jury with a reasonable basis to conclude that the incident occurred before Mary's 13th birthday, which was in late May 2014.[10] In the first place, Mary's initial testimony indicated that the rape in the guest bedroom (Count I) occurred between 6th and 7th grade, which would have been in 2013. Based on her later testimony, this rape could also could have occurred during 2012, 2013, or 2014, when she was in 6th or 7th grade. Because Mary stated that the alleged rape in Count II was "more recent" than that rape, it could well have occurred after Mary turned 13.

**{¶ 85}** Mary gave no further indication of the time frame of the second rape, other than her response of "yes" to the prosecutor's statement that it was definitely after 2012. However, Mary did not consult with a counselor until May 2015, and her last contact with Sibrian occurred in July 2015. "After 2012" leaves a very large time frame during which Mary was in contact with Sibrian and was over 13 years of age (late May 2014 to at least May 2015). As a result, the jury was left to guess about the time frame, and its conclusion that the rape occurred when Mary was under 13 is against the manifest weight of the evidence.

**{¶ 86}** The alleged rape in Count III occurred in Mary's parents' bedroom, when Sibrian used a white vibrator on Mary. Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), pp. 50-51. *See also* State's Brief, p. 14. Concerning a time frame for this event, Mary stated that on direct examination that it was "more recent also." Transcript at p.50. No potential time-frame was provided at that point. *Id.* at pp. 50-51.

---

[10] *See* footnotes 2 and 6-9.

{¶ 87} During cross-examination, when Mary was questioned about the incident involving the white vibrator in her parents' room (the third alleged Rape in Count III), the following exchange occurred:

Q.   Okay. Which room were you in when he first used the vibrator on you?

A.   Which one?

Q.   The white one.

A.   The white one I was talking about earlier?

Q.   Yes, ma'am.

A.   My parents' room.

Q.   Parents' room.

And what year do you think that was?

A.   After – after sixth grade, so seventh or eighth grade.

Q.   So, according to the State's chart, sometime between 2013 and 2015?

A.   Yes.

Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), p. 61.

{¶ 88} Again, since Mary turned 13 in late May 2014, a date that may have been either before or after she turned 13 (2013 to 2015) did not prove the elements listed in the indictment, i.e., the evidence did not allow a fact-finder to do anything other than guess as to when the incident occurred or whether it occurred within the dates listed in the indictment.  This does not mean such an incident did not happen at some point. However, the State chose to charge Sibrian with violations that occurred prior to the time that Mary turned 13, and the State chose which dates to list in the indictment. Consequently, this conviction was also against the manifest weight of the evidence.

{¶ 89} With respect to the charge that formed the basis for the Gross Sexual Imposition violation against a person under the age of 13 (Count IV), Mary indicated that she and Sibrian were in her parents' shower and he tried to have sex with her but was unsuccessful. As a result, he had her manipulate his penis by hand. However, Mary failed to provide any testimony indicating that this event even potentially happened between the dates listed in the indictment. *See* Excerpted Transcript of Proceedings (Jury Trial, Verdict, and Sentencing), pp. 51-52 and 59. *See also* State's Brief, p. 14. In fact, Mary mentioned no time frame whatsoever for this act. Again, Mary did not consult with a therapist until May 2015, and continued to have contact with Sibrian throughout that time. As a result, the jury had no basis, other than conjecture, to conclude that this event occurred prior to the time Mary turned 13 years old in May 2014.

{¶ 90} Based on the preceding discussion, the Fourth Assignment of Error is sustained in part. The conviction for Gross Sexual Imposition (Count IV) and two Rape convictions (Counts II and III) are against the manifest weight of the evidence, and will be reversed and vacated. This assignment of error is overruled as to the Rape conviction for Count I, which will be affirmed.

V. Cumulative Errors

{¶ 91} Sibrian's Fifth Assignment of Error states that:

The Cumulative Errors of the Trial Deprived Appellant of a Fair Trial.

{¶ 92} Under this assignment of error, Sibrian argues that due to the multitude of errors in the trial, he was denied a fair trial. The Supreme Court of Ohio has said that under the cumulative error doctrine, "a conviction will be reversed when the cumulative

effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶ 93} Although we have reversed three convictions based on manifest weight grounds, the only other error that occurred was harmless, and there is no basis upon which to believe that Sibrian was deprived of a fair trial. Accordingly, the Fifth Assignment of Error is overruled.

VI. Conclusion

{¶ 94} Sibrian's First, Second, Third, and Fifth Assignments of Error are overruled, and his Fourth Assignment of Error is overruled in part and sustained in part. The judgment of the trial court, therefore, is reversed in part and affirmed in part. The convictions and sentences for Counts II, III and IV are reversed and vacated, and the conviction and sentence for Count I are affirmed. This matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH, J., concurs.

HALL, P.J., concurring:

{¶ 95} I agree that three of the four convictions are against the manifest weight of the evidence, not because there is any question about *whether* they were committed, but only because there is a question about whether they were committed within the time frame specified in the indictment.

{¶ 96} The indictment here charged three counts of rape and two counts of gross sexual imposition, all of which were alleged to have occurred between "May * * *, 2012 [t]hrough May * * *, 2014."[11] At trial, the victim specifically testified about six sexual encounters: (1) an initial event of sexual touching on the couch in the basement movie room when she was around six years old,[12] (Tr. at 34); (2) sexual conduct that occurred in the victim's bedroom when it was pink, which was before repainting in June 2011 (*Id.* at 38) (and which was before the indictment date range); (3) sexual conduct that occurred in the basement guest bedroom when she was between the sixth and seventh grade (within the indictment date range); (4) sexual conduct that occurred in the main floor "man cave" "more recent than the 6th or 7th grade" and definitely after 2012 (*Id.* at 46) (but without specificity that it was before she turned 13 in late May 2014); (5) when the defendant used a white vibrator on her when in her parents' bedroom, while they were gone, whose only time frame is "[t]hat was more recent also." (*Id.* at 50); and (6) when the defendant had her manipulate his penis in the shower of the bathroom of her parent's bedroom, without any time reference.

{¶ 97} The appellant has not provided us with an entire transcript. Although, as the lead opinion recognizes, we apparently have all the testimony, we do not have voir dire, opening statements, closing arguments, or instructions from the court. It could be difficult to connect each of the described events with a count in the indictment except the State

---

[11] *See* footnotes 2 and 6-10.

[12] One can glean from various discussions in the submitted partial transcript that this incident relates to the gross sexual imposition count number five in the indictment, for which the State requested and was granted a nolle prosequi, without prejudice, by entry filed January 26, 2016, because the event occurred well before the date range in the indictment.

has given direction:

> Count one was for an incident in the basement guest bedroom, Count two occurred in the "man room," Count three occurred in the victim's parent's bedroom. Count Four occurred in the shower in the victim's parent's bedroom. Each of these is a distinct act committed with a separate animus.

(State's Memorandum on Merger and Sentencing, filed in the trial court on February 2, 2016, at unnumbered pg. 3).

{¶ 98} After lining up the evidence of the events with the four undismissed counts of the indictment, I join in the conclusion that only count one, the basement guest room incident, is not against the manifest weight of the evidence. Again, it is not that the other incidents didn't happen; it is just that the State did not introduce weight of evidence to demonstrate they happened after late May 2012 and before late May 2014.[13]

{¶ 99} I note also that the State did not charge alternative offenses that could apply to the defendant's criminal actions even if they occurred after the victim reached the age of 13, i.e., rape under 2907.02(A)(1) (a) or (c) or 2907.02(A)(2), or a myriad of other sex offenses that could have been applicable. Accordingly, the jury did not have the ability to find the defendant guilty of some other offense for his actions.

. . . . . . . . . . . . .

---

[13] *See* footnotes 2 and 6-12.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Mark Wieczorek
Hon. Dennis J. Adkins